STATE OF NEBRASKA, APPELLEE, V. KENNETH L. SMITH, APPELLANT.

352 N.W.2d 620

Filed August 3, 1984. No. 83-594.

P. Stephen Potter of Bacon and Potter, for appellant.

Paul L. Douglas, Attorney General, and Michaela M. White, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

SHANAHAN, J.

A county court jury found Kenneth L. Smith guilty of the charge that Smith operated a motor vehicle while he was under the influence of alcoholic liquor or while he had .10 of 1 percent or more by weight of alcohol in his body fluid. See Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1982). After determining that such offense was Smith's second conviction of driving while under the influence of alcoholic liquor, the county court for Dawson County, Nebraska, sentenced Smith to pay a fine of $500, confinement in the county jail for 48 hours, and 2 years' probation. On appeal the district court affirmed the judgment of the county court, and Smith appeals to this court. We affirm.

During the late hours of November 12, 1982, Smith spent about 1½ hours in Bob's Reload Lounge in Cozad, Nebraska, where, according to Smith, he drank four cans of beer. Smith drank his last beer around 1:15 a.m. on November 13, although one of Smith's friends testified Smith left the lounge at 1 a.m. Alone, Smith drove his pickup east on U.S. Highway 30 toward the Darr road. The Darr road is approximately 4 miles from

Bob's Reload Lounge.

Trooper Gregory L. Vandenberg of the Nebraska State Patrol was on routine patrol westbound on Highway 30 as Smith's pickup approached from the west. By the mobile radar unit in the patrol car, Trooper Vandenberg determined that Smith's pickup was traveling at 69 miles per hour. After Smith's oncoming pickup passed the trooper's unit, Vandenberg turned his vehicle and pursued Smith. Smith made a right turn from Highway 30 and proceeded south on the Darr road for approximately one-fourth of a mile, where the trooper stopped Smith at 1:45 a.m. to issue a speeding citation. Before he was stopped, Smith had not driven erratically and had violated no traffic law except the speeding infraction.

At the driver's side of the stopped pickup, Trooper Vandenberg asked for Smith's driver's license and vehicle registration. At that time Vandenberg smelled the odor of alcoholic beverage coming from within the pickup. Trooper Vandenberg asked Smith to come to the patrol car, observed Smith's conduct, and noted that Smith was walking unsteadily. In the patrol unit Vandenberg again smelled the odor of alcoholic beverage on Smith's breath, and Smith admitted that he had been drinking at the Reload Lounge.

During the stop at the Darr road, Trooper Vandenberg used an "Alco-Sensor," an instrument used by law enforcement officers in connection with field sobriety tests. The Alco-Sensor was used for the preliminary breath test of Smith pursuant to Neb. Rev. Stat. § 39-669.08(3) (Cum. Supp. 1982), which in pertinent part provides that a law enforcement officer can require an individual "to submit to a preliminary test of his or her breath for alcohol content if the officer has reasonable grounds to believe that such person has alcohol in his or her body, or has committed a moving traffic violation, or has been involved in a traffic accident." That preliminary test was administered to Smith at 2:07 a.m. The Alco-Sensor was a "pass-warn-fail" model which indicates any presence of alcohol on the breath of the person tested. As described by Vandenberg, the Alco-Sensor is a means for an officer to confirm a "suspicion" that "the subject has consumed alcoholic beverage or is under the influence," or "to determine

whether or not the subject does have alcohol on his breath." According to Vandenberg, the Alco-Sensor cannot measure the blood alcohol content of an individual, but is used as a test "to build probable cause" to arrest an individual and require an additional test of blood, breath, or urine in accordance with § 39-669.08(4). Over Smith's objection, Vandenberg testified the Alco-Sensor, when applied to Smith's breath, registered "fail." Vandenberg arrested Smith and transported him to the city police department in Lexington, Nebraska.

Smith and Vandenberg arrived at the Lexington Police Department at 2:18 a.m., where Smith stated he had his last drink of alcohol at Bob's Reload Lounge at 1 a.m. Trooper Vandenberg then administered a breath test on Smith with an "Intoxilyzer 4011AS" at 2:35 a.m. (Smith stipulated foundation for the test equipment and correctness of all procedures used for the Intoxilyzer breath test.) The digital "readout" of Smith's test on the Intoxilyzer was .12 percent. Smith acknowledged such measurement by the Intoxilyzer.

At the police station Trooper Vandenberg also administered four separate sobriety tests, including the balance test, in which Smith "wobbled back and forth"; the heel-to-toe test; and two types of the finger-to-nose test, during which Smith touched the bridge of his nose with his index finger during one test and touched his upper lip during another test. Vandenberg also observed Smith staggering and having difficulty getting through the door to use the restroom at the police station.

Trooper Vandenberg, based on his observations but over Smith's objection, testified that Smith was "under the influence of alcohol to such an extent that it impaired his physical and mental faculties to an appreciable extent" while operating the pickup. Later, without objection, Vandenberg again expressed his opinion that Smith was "under the influence." On cross-examination Vandenberg reaffirmed his opinion given on direct examination, namely, that Smith was "under the influence of alcohol."

On cross-examination Trooper Vandenberg acknowledged that generally an individual reaches a "peak" or the maximum level of absorption for alcohol anywhere from 45 minutes to an hour after the last ingestion of alcohol and that an individual's

level of alcohol thereafter decreases at the rate of .015 percent per hour. Also, Vandenberg acknowledged the Intoxilyzer 4011AS had a margin of error of .01 percent, so that the reading of .12 percent regarding Smith could actually have been .11 percent or .13 percent instead of the .12 percent "readout" on Smith's breath test.

The jury found Smith guilty as charged.

Smith contends there is no sufficient evidence to sustain his conviction and that it was prejudicial error to admit the testimony of Trooper Vandenberg regarding the Alco-Sensor, the preliminary breath test.

In his question about the sufficiency of evidence to support the verdict, Smith has perhaps passed over the fact that § 39-669.07 defines an offense based on multiple situations involving alcohol, namely, operating or controlling a motor vehicle while (1) under the influence of alcoholic liquor or (2) having .10 of 1 percent or more by weight of alcohol in body fluid. See *State v. Weidner*, 192 Neb. 161, 219 N.W.2d 742 (1974). There was proper evidence before the jury regarding Smith's driving his pickup while he was under the influence of alcoholic liquor—conduct and a situation prohibited by § 39-669.07. Trooper Vandenberg testified about Smith's odor from alcoholic beverage and additional observations about Smith's difficulties in locomotion at the scene of the arrest as well as at the police station. On both direct examination and cross-examination, Trooper Vandenberg expressed his opinions that Smith was intoxicated and "under the influence." Such opinions were among the evidence from which a jury could reasonably infer that Smith was guilty of driving a motor vehicle while under the influence of alcoholic liquor.

No aspect of the Intoxilyzer 4011AS is questioned by Smith. In fact, during argument to this court, Smith's counsel emphasized the importance of the Intoxilyzer measurement relative to Smith's defense, which may be summarized in the following hypothesis: The Intoxilyzer's margin of error results in an accepted measurement of Smith's blood alcohol level of .11 percent at 2:35 a.m. during the 45-minute period of an ascending blood alcohol level; an ascending level of Smith's blood alcohol content prevented determination of the precise

blood alcohol level at the time Smith was stopped at 1:45 a.m., or indicated that Smith's blood alcohol level was less than .10 percent; hence, Smith cannot be convicted of driving with a blood alcohol content at a level more than .10 percent.

In probing the intricacies of machines and man's metabolism, Smith has overlooked a less complicated and more common item—the clock. Testimony concerning the time of Smith's last drink of alcohol ranges from 1 a.m. to 1:15 a.m. Crucial to Smith's hypothesis is a postingestion span of 45 minutes to 1 hour as the period during which the blood alcohol level rises toward a maximum level of absorption. However, the Intoxilyzer test was not administered during such initial 45-minute or 1-hour period following Smith's last consumption of alcohol. The Intoxilyzer test was administered at 2:35 a.m., at least 1 hour and 20 minutes after Smith's last consumption of alcohol. In view of the testimony and the suggested hypothesis, Smith's blood alcohol level was descending at the time the Intoxilyzer test was administered, not ascending. Concerning proof that Smith drove his pickup while his blood alcohol content was more than .10 percent, Trooper Vandenberg testified that, after the maximum level of absorption has been reached, the individual's blood alcohol level decreases at the rate of .015 percent per hour. Among various courses open to the jury in determining Smith's blood alcohol content at 1:45 a.m. were two paths. First, from the evidence the jury could have formulated a commonsense hypothesis of its own: whatever is descending is moving from a higher level. At 2:35 a.m. the uncontradicted Intoxilyzer measurement of Smith's blood alcohol content was at least .11 percent and descending from a greater or maximum level of absorption reached by the time the trooper stopped Smith at 1:45 a.m. Therefore, Smith's blood alcohol content was greater than .11 percent when he was stopped at 1:45 a.m. Second, based on the evidence, the jury could have satisfactorily computed Smith's blood alcohol content at 1:45 a.m. On the basis of an individual's blood alcohol level decreasing at the rate of .015 percent per hour, Smith's blood alcohol level decreased .01125 percent between 1:45 a.m. (when Smith was stopped) until 2:35 a.m. (when the Intoxilyzer test was administered). [Rate of decrease (.015

percent) multiplied by the elapsed time (three-fourths of an hour or 75 percent of the hourly rate of decrease) equals .01125 percent.] According to the evidence adduced by Smith in his questions about the Intoxilyzer, and allowing for the margin of error in the Intoxilyzer test, the lowest level of Smith's blood alcohol content was .11 percent. By adding .01125 percent (the amount of the decrease from 1:45 a.m to 2:35 a.m.) to the level of .11 percent, determined by the Intoxilyzer test at 2:35 a.m., a jury could find that at the time Smith was stopped on the Darr road, the level of Smith's blood alcohol content was at least .121 percent. A jury could have so interpolated the figures pertaining to the measurement by the Intoxilyzer at 2:35 a.m. and the hourly rate of decrease in Smith's blood alcohol content to determine Smith's blood alcohol level at 1:45 a.m. By either path, and by inference from the facts presented, the jury reached a permissible verdict.

Rule 401 of the Nebraska Evidence Rules provides: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1979). Trooper Vandenberg described the function of the Alco-Sensor as a means for an officer to confirm a "suspicion" that a driver had been drinking alcohol. Vandenberg also acknowledged that the Alco-Sensor was not an instrument for measuring the blood alcohol content of a driver. Moreover, as testified by the trooper, the Alco-Sensor is used as an ingredient for probable cause to arrest and require a postarrest test of blood, breath, or urine as authorized under § 39-669.08(4). As a matter involving probable cause, any aspect of the breath test was a matter of law for judicial determination, not evidence for the jury. (In disposing of the question raised about the preliminary breath test in this case, we need not define the exact legal nature and role of the preliminary breath test.) The result of the preliminary breath test was irrelevant to prove any aspect of the charge against Smith. Under the circumstances it was error to place before the jury any evidence regarding the result from the Alco-Sensor. However, Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1982)

provides in part:

> No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred.

Although it was error for the trial court to admit the result of the Alco-Sensor, testimony about the Alco-Sensor was cumulative. Other evidence against Smith, and properly before the jury, was overwhelming and of such stature that admission of evidence about the Alco-Sensor did not cause any miscarriage of justice in Smith's trial. Cf. *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980) (cumulative evidence not requiring reversal). See, also, *State v. Heiser*, 183 Neb. 665, 163 N.W.2d 582 (1968).

The judgment of the district court affirming the judgment upon Smith's conviction in the county court is correct and is affirmed.

AFFIRMED.