State of Nebraska, appellee, v. Charles J. Mays, appellant.

578 N.W. 2d 453

Filed April 21, 1998.   No. A-97-797.

Adam J. Sipple, of Quinn & Wright, for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

Miller-Lerman, Chief Judge, and Irwin and Inbody, Judges.

Irwin, Judge.

## I. INTRODUCTION

Charles J. Mays was charged with operating a motor vehicle while his operator's license was revoked, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993). Mays filed a motion to suppress, alleging that the stop of his vehicle was unconstitutional and that all evidence obtained as a result should be suppressed. After a hearing, the motion was denied. A bench trial was held on a stipulated record, at which time Mays preserved the objections raised in his motion to suppress. Mays was found guilty of the above charge and sentenced to 24 months' inten-

sive supervision probation. See Neb. Rev. Stat. § 29-2262.03 (Reissue 1995). Mays appeals his conviction and sentence. Because we conclude that the police did not possess a reasonable suspicion to justify the stop of Mays' vehicle, we reverse the judgment of the district court and dismiss the case.

## II. FACTUAL BACKGROUND

The facts relevant to our decision are as follows: On July 10, 1996, at approximately 6:30 p.m., Officer Adam Kyle of the Omaha Police Division conducted a traffic stop of Mays' vehicle. As a result of the stop, Kyle learned that Mays was driving while his license was revoked. Mays was then charged and prosecuted.

At the hearing on Mays' motion to suppress, the State's evidence consisted exclusively of Kyle's testimony. Kyle testified as follows regarding his reasons for stopping Mays' vehicle on July 10, 1996: According to Kyle, he received information from an Officer Baudler that the driver of a red pickup truck had drugs on his person and was dealing drugs in the Pleasantview West housing projects (Pleasantview). Baudler told Kyle that the driver was known by the street name "Twin" and that he had a suspended driver's license. Although Kyle testified that Baudler had received the above information that day, Kyle was unsure whether he had received this information from Baudler earlier in the day or over the radio prior to the stop.

The record provides no further description of the driver, the vehicle, or the activity. Kyle did not explain his basis of knowledge for the information except that he was told of it by Baudler. In no way did Kyle explain Baudler's source of the information. In addition, Kyle did not indicate whether he was aware who "Twin" was at the time of the stop. Kyle was also unsure whether he received the information prior to the stop indicating that "Twin" was a black male.

Sometime before 6:30 p.m. on July 10, 1996, Baudler contacted Kyle and told him either that the red pickup truck was leaving Pleasantview or that the red pickup truck was arriving at Pleasantview. The record does not reflect whether this information was received at the same time as the prior information regarding "Twin," or at a later time. After receiving this latest

message, Kyle saw a red pickup truck traveling on Parker Street away from Pleasantview. There was no testimony suggesting that Kyle saw or recognized the driver prior to the stop. Kyle testified that he was unable to read the license plate due to a trailer ball on the back of the truck. However, a tape recording of Kyle's radio transmissions indicates that Kyle called in a partial plate number a few moments before the stop of Mays' vehicle. After observing the red pickup truck, Kyle initiated a stop. Kyle testified that he observed no traffic violations prior to the stop.

## III. ASSIGNMENTS OF ERROR

For his assignments of error, Mays contends that the district court erred in overruling his motion to suppress, in admitting over his objection an exhibit purporting to show that his license was revoked for 15 years, and in finding him guilty despite a lack of proof that his driving privileges were revoked at the time of his arrest.

## IV. ANALYSIS

Mays assigns that the district court erred in overruling his motion to suppress. He argues that the officer did not have a reasonable suspicion to justify the stop of Mays' vehicle. Mays further argues that if the stop of his vehicle was unjustified, all evidence subsequently obtained was constitutionally inadmissible as the "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

### 1. District Court's Suppression Order

We initially address the lack of specificity in the district court's order overruling Mays' motion to suppress. In *State v. Osborn*, 250 Neb. 57, 67, 547 N.W.2d 139, 145 (1996), the Nebraska Supreme Court mandated: "Henceforth, district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress. The degree of specificity required will vary, of course, from case to case." In an attempt to comply with *Osborn*, the district court stated in its order: "Upon consideration of the evidence and the law, the Court finds that there was reasonable suspicion to justify the stop of the automobile that defendant was operating and

that, therefore, the defendant's motion should be overruled." In this case, some detailed findings of fact would have been illuminating. As indicated above, certain aspects of Kyle's testimony were conflicting, and how the district court judge arrived at his conclusion to overrule the motion to suppress would have helped us apply the standard of review we are obliged to follow. Even after resolving all conflicts in the testimony of Kyle in favor of the State, we conclude that there was not sufficient justification for the stop of Mays' vehicle. We set forth the reasons for our conclusion below.

## 2. STANDARD OF REVIEW

If police acted without a warrant, the State has the burden to prove the reasonableness of the search or seizure. *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992); *State v. Valdez*, 5 Neb. App. 506, 562 N.W.2d 64 (1997). On appeal, the ultimate determination of reasonable suspicion is reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996).

## 3. REASONABLE SUSPICION

Investigatory stops are permissible only upon a reasonable suspicion supported by specific and articulable facts that the person is, was, or is about to be engaged in criminal activity. In determining whether an officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993). See, also, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Ellington, supra.*

The record before us does not reveal the source of the information Kyle received from Baudler which provided the basis for Kyle's stop of Mays' vehicle. It is well established that an investigative stop, like probable cause, is to be evaluated by the collective information of the police engaged in a common

investigation. *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997); *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997). It is also well established that a reasonable suspicion to stop a vehicle cannot be found when there is no factual foundation explaining the source of the information being relayed between officers. In *Soukharith*, 253 Neb. at 321, 570 N.W.2d at 354, quoting *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977), the Nebraska Supreme Court held that reasonable suspicion to stop a vehicle cannot be based solely on receipt by the stopping officer of a radio dispatch to stop the described vehicle " 'without any proof of the factual foundation for the relayed message.' " (Emphasis omitted.) See, also, *State v. Thompson*, 231 Neb. 771, 438 N.W.2d 131 (1989). In *Benson, supra,* the court held that where no evidence was provided at the suppression hearing regarding the information or facts relied on as the factual foundation for the broadcast message, the radio message alone did not establish the existence of reasonable suspicion.

In the present case, the State did not offer evidence regarding the factual foundation for the information conveyed to Kyle by Baudler. We can only speculate as to the source of Baudler's information. We certainly cannot presume that the source of the information was reliable. See, e.g., *State v. Utterback*, 240 Neb. 981, 485 N.W.2d 760 (1992) (holding that status of citizen informant cannot attach unless affidavit sets forth circumstances from which existence of status can reasonably be inferred). As stated by one court when explaining why an unknown informant had little credibility: "The tip could have been based on first-hand information but, absent even a claim that it was, it is also possible that the tipster's purported knowledge was second-hand or third-hand or supposition or rumor or the product of a grudge against a rival or vengeance against an enemy." *Brown v. U.S.*, 590 A.2d 1008, 1017 (D.C. 1991).

For these reasons, we conclude, based on the totality of the circumstances presented in the record before us, that Kyle failed to articulate specific and objective facts that would justify an investigatory stop under *Terry v. Ohio, supra.* The record does not establish that the police possessed a factual foundation to support a reasonable suspicion justifying the stop of Mays' vehicle. Because Kyle's knowledge of Mays' revoked driver's

license was obtained as a direct result of the illegal stop, it was error for the district court to deny Mays' motion to suppress. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

#### 4. SUFFICIENCY OF EVIDENCE

Mays also challenged the sufficiency of the evidence to support his conviction. After determining reversible error occurred at the trial level, it is necessary for an appellate court to address a defendant's assigned error regarding the sufficiency of the evidence. See, *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987); *State v. Noll*, 3 Neb. App. 410, 527 N.W.2d 644 (1995). "If it appears the evidence is sufficient to support the convictions, the cause may be remanded to the district court for further proceedings; if the evidence is not sufficient . . . the cause must be dismissed." *Lee*, 227 Neb. at 283, 417 N.W.2d at 30.

We have examined the record. Given our ruling on the suppression issue, it is axiomatic that all evidence obtained as a result of the illegal stop may not be used by the State to prosecute Mays. Viewing the remaining evidence in the record in favor of the State, it is insufficient to support a conviction. Therefore, we must reverse, and dismiss.

### V. CONCLUSION

For the reasons stated above, we conclude that the district court erred in failing to grant Mays' motion to suppress. Given our resolution of the appeal, we need not address Mays' remaining assigned errors. The judgment is reversed, and the case is dismissed.

REVERSED AND DISMISSED.