753 N.W.2d 333 (2008)
276 Neb. 173
STATE of Nebraska, appellee,
v.
Andrew ROYER, appellant.
No. S-07-834.
Supreme Court of Nebraska.
July 18, 2008.
*337 Brad Roth, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., L.L.O., Lincoln, for appellant.
Jon Bruning, Attorney General, Edward G. Vierk, George R. Love, Columbus, and Amanda Spracklen-Hogan, Senior Certified Law Student, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*334 WRIGHT, J.

NATURE OF CASE
Andrew Royer rapidly accelerated his vehicle from a stop sign and squealed his tires. He was stopped by a police officer and given field sobriety tests. He was then transported to a detoxification facility and given a breath test. It showed that Royer had .234 of a gram of alcohol per 210 liters of breath. He was charged with and convicted of third-offense driving while under the influence of alcoholic liquor or drugs (DUI). He appealed to the Lancaster County District Court, which affirmed the county court's judgment.

SCOPE OF REVIEW
Both the district court and the Nebraska Supreme Court generally review *338 appeals from the county court for error appearing on the record. State v. Dittoe, 269 Neb. 317, 693 N.W.2d 261 (2005). In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. Id.
When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id. An appellate court nonetheless has an obligation to resolve questions of law independently of the conclusions reached by the trial court. See State v. Jensen, 269 Neb. 213, 691 N.W.2d 139 (2005).
A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo. See State v. Allen, 269 Neb. 69, 690 N.W.2d 582 (2005), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).

FACTS
Royer was stopped by Officer Bryan Hanson of the Lincoln Police Department after Royer accelerated his vehicle rapidly from a stop sign and squealed his tires. Upon contacting Royer, Hanson observed that Royer's eyes were watery and bloodshot, and Hanson detected a strong odor of alcohol on Royer's breath. Royer stated that he had consumed four to five alcoholic beverages.
Royer submitted to field sobriety tests. After the tests were completed, Hanson took Royer into custody and walked him to the police cruiser. Hanson observed Royer swaying and stumbling. Based on Hanson's observations, training, and experience, and on Royer's performance on the field sobriety tests, Hanson believed that Royer was under the influence of alcohol. Hanson transported Royer to a detoxification facility. While in transit, Royer stated that this would be his third offense and that he knew he would "blow over the legal limit." At the facility, Hanson administered a formal breath test using an Intoxilyzer, which showed that Royer had .234 of a gram of alcohol per 210 liters of breath.
Royer was charged with third-offense DUI, in violation of Neb.Rev.Stat. § 60-6,196 (Reissue 2004). Royer moved to suppress, asserting that (1) the stop and seizure were not based on a reasonable, articulable suspicion that a crime had been or was about to be committed; (2) the arrest was not based on probable cause; and (3) the arresting officer did not have knowledge based on information reasonably trustworthy under the circumstances that justified a prudent belief that Royer was committing or had committed a crime. Therefore, he argued that (1) there was no probable cause and the arrest was unlawful, (2) the search and seizure were not incident to a lawful arrest and exceeded the scope of searches incident to an arrest, (3) his statements were taken in violation of his rights under the 5th and 14th Amendments, and (4) all breath tests were taken in violation of Nebraska law and 177 Neb. Admin. Code, ch. 1 (2004).
After the suppression hearing, the county court found that the field sobriety tests were not coerced and that even if the administration of the field sobriety tests *339 amounted to a search, the officer had a reasonable, articulable suspicion that Royer was under the influence based on his driving, the odor of alcohol, his admission of drinking, and his watery, bloodshot eyes.
The court determined that the officer followed title 177 in administering the breath test, because he reviewed the maintenance records of the Intoxilyzer and had access to the repair records that indicated no repair work had been done on the machine during the relevant period. The court overruled Royer's motion to suppress.
Following a bench trial, the court found Royer guilty of third-offense DUI. At the enhancement hearing, Royer objected to one prior conviction because part of the file-stamp date on the order was not legibleit indicated "APR 30 20." He also argued that another conviction did not indicate whether Royer appeared with counsel or whether he waived counsel.
The court found the prior convictions to be valid. The April 30 date in question was on the same page in the record as the sentencing, which occurred on April 30, 2002, and the court found that the document met the file-stamp requirement. It also found that Royer was represented by counsel at the time of the plea and sentencing in question.
Royer was ordered to pay a fine of $600, sentenced to 10 days in jail, and placed on probation for 36 months. He was also ordered to pay costs and fees of $1,029, and his driver's license was revoked for 1 year.
Royer appealed to the district court, asserting that the county court erred in finding him guilty of third-offense DUI, in the admission of certain evidence, and in overruling the motion to suppress. Royer also claimed the court erred in considering certain prior convictions at the enhancement hearing, because the prior convictions were not properly file stamped and did not show that Royer was represented at arraignment.
The district court affirmed. It found no error in the determination that proper foundation was laid for the admission of the Intoxilyzer breath test results and that Hanson followed title 177. The court also concluded that the reckless acceleration of Royer's vehicle was sufficient to establish the reasonable suspicion necessary to justify the investigatory stop and that the officer's observations after the stop were sufficient to justify the request to perform the field sobriety tests.
As to the claimed error in the enhancement, the district court determined that the county court's written notations reflected that the sentencing order was entered on April 30, 2002. Although the final two numbers of the year were not legible on the file stamp, the court found no indication that the file stamp was placed on the record at any time other than April 30, 2002. It concluded that the file-stamp date was April 30, 2002, and that the prior conviction could be used to enhance Royer's sentence. Royer's current conviction and sentence were affirmed.

ASSIGNMENTS OF ERROR
Royer argues that the district court erred in (1) finding that evidence of the field sobriety tests was admissible, (2) determining there was sufficient probable cause to arrest Royer, (3) affirming the county court's finding that the arresting officer followed title 177, and (4) finding that a prior conviction which was not properly file stamped was a final order and admissible for enhancement.

*340 ANALYSIS

FIELD SOBRIETY TESTS
Royer claims that the field sobriety tests violated his right to be free from unreasonable search and seizure because field sobriety tests constitute a search within the scope of the Fourth Amendment to the U.S. Constitution. The Fourth Amendment guarantees the right to be free of unreasonable search and seizure. This guarantee requires that an arrest be based upon probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Royer was stopped after the police officer observed Royer's vehicle squeal its tires and accelerate rapidly from a stop sign. Royer makes no argument that the officer lacked probable cause to stop his vehicle. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. State v. Louthan, 275 Neb. 101, 744 N.W.2d 454 (2008). Therefore, we conclude that the officer had probable cause to stop Royer.
Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. Id. In order to continue to detain a motorist, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the stop. Id. Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion, but less than the level of suspicion required for probable cause. Id. Reasonable suspicion to detain an individual following a traffic stop must be determined on a case-by-case basis. See id.
Hanson observed that Royer's eyes were watery and bloodshot. Hanson detected a strong odor of alcohol on Royer's breath, and Royer admitted to consuming four or five alcoholic beverages. Therefore, Hanson had a reasonable, articulable suspicion that Royer was under the influence of alcohol or drugs in violation of § 60-6,196.
Royer asks this court to hold that a field sobriety test is a full search and seizure and must be supported by probable cause. He cites People v. Carlson, 677 P.2d 310 (Colo.1984), which this court previously considered in State v. Thomte, 226 Neb. 659, 413 N.W.2d 916 (1987). We stated that other jurisdictions have determined that a roadside sobriety test "is more analogous to a limited Terry stop than to a formal arrest and may be justified by an officer's reasonable suspicion, based on specific articulable facts, that the driver is intoxicated." State v. Thomte, 226 Neb. at 664, 413 N.W.2d at 919.
In State v. Thomte, supra, we did not reach the issue whether probable cause was required to administer roadside sobriety tests, because following the initial stop, the officer's observations of the defendant constituted probable cause to believe that he was driving while under the influence of alcohol. Therefore, the sobriety tests were reasonable under the circumstances.
The issue is again before us. We hold that field sobriety tests may be justified by a police officer's reasonable suspicion based upon specific articulable facts that the driver is under the influence of alcohol or drugs. In determining the reasonableness of a search for purposes of the Fourth Amendment, the court balances the intrusion upon an individual's privacy with the need to promote governmental interests. See State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007). State v. *341 McKinney, supra, set out the balancing test for determining the reasonableness of a search, and other courts have applied a similar test to determine the reasonableness of a field sobriety test.
In State v. Superior Court, 149 Ariz. 269, 718 P.2d 171 (1986), the defendant was stopped because his vehicle was meandering within its lane. His appearance and breath indicated intoxication, and the officer directed him to perform six roadside sobriety tests. Defense counsel asserted that any roadside sobriety test was a full search and must therefore be founded on probable cause. He relied on People v. Carlson, 677 P.2d at 317, in which the Colorado Supreme Court held that "[r]oadside sobriety testing constitutes a full `search' in the constitutional sense of that term and therefore must be supported by probable cause."
The Arizona Supreme Court disagreed and held that the administration of roadside, performance-based sobriety tests does not require probable cause. The court stated that "the necessity of the search is balanced against the invasion of the privacy of the citizen that the search entails." State v. Superior Court, 149 Ariz. at 274, 718 P.2d at 176. The court noted that the state had a compelling interest in removing drunk drivers from the highways. This compelling interest must be weighed against the "substantiality of the intrusion" of roadside sobriety tests that measure the physical performance of the suspected drunk driver. Id.
In an analogy to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court reasoned that the threat to public safety posed by a person driving under the influence of alcohol was as great as the threat posed by a person illegally concealing a gun. State v. Superior Court, supra. The battery of roadside tests was a limited search and was more analogous to a Terry stop than to a formal arrest. State v. Superior Court, supra.
As did the Arizona court, we conclude that field sobriety tests may be justified by an officer's reasonable suspicion based upon specific articulable facts that a driver is under the influence of alcohol or drugs. The reasonable suspicion must be determined on a case-by-case basis.
Other jurisdictions have also rejected the idea that probable cause is required before field sobriety tests may be administered. See, e.g., Rogala v. District of Columbia, 161 F.3d 44 (D.C.Cir.1998) (field sobriety test is such minimal intrusion on driver of car that only reasonable suspicion is required to conduct such test); Galimba v. Municipality of Anchorage, 19 P.3d 609 (Alaska App.2001) (field sobriety tests are not generally considered searches for constitutional purposes; police do not need probable cause sufficient for arrest before requesting typical field sobriety tests); State v. Ferreira, 133 Idaho 474, 988 P.2d 700 (Idaho App.1999) (administration of field sobriety tests following traffic stop is but investigative detention). As the Montana Supreme Court stated in Hulse v. State, Dept. of Justice, 289 Mont. 1, 21, 961 P.2d 75, 87 (1998), "[W]e conclude that the State's interest in administering field sobriety tests based upon particularized suspicion rather than the more stringent standard of probable cause substantially outweighs the resulting limited intrusion into an individual's privacy."
A trial court's ruling on a motion to suppress based on the Fourth Amendment, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to *342 perform a warrantless search are reviewed de novo. See State v. Allen, 269 Neb. 69, 690 N.W.2d 582 (2005), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007). The county court determined that even if the field sobriety tests amounted to a search, the officer had a reasonable, articulable suspicion that Royer was under the influence based on his driving, the odor of alcohol, his admission of drinking, and his watery, bloodshot eyes. The district court determined that the reckless acceleration of Royer's vehicle was sufficient to establish the reasonable suspicion necessary to justify the investigatory stop and that the officer's observations after the stop were sufficient to justify a request to perform field sobriety tests. We agree.
Hanson was required to have only a reasonable, articulable suspicion that Royer was driving under the influence in order to expand the scope of the initial traffic stop and detain Royer for field sobriety tests. Hanson observed immediately upon contact with Royer that he had watery, bloodshot eyes and that he smelled of alcohol. Royer admitted to Hanson that he had consumed four or five alcoholic beverages.
As Hanson walked Royer to the police cruiser, Royer swayed and stumbled. Based upon his observation and Royer's performance on the field sobriety tests, Hanson believed that Royer was under the influence of alcohol. The county court was correct in finding that Hanson had a reasonable, articulable suspicion that Royer was driving under the influence, and the district court was correct in affirming the county court's decision.

COMPLIANCE WITH TITLE 177
Royer argues that the breath test was not conducted in accordance with the methods currently approved by the Nebraska Department of Health and Human Services (DHHS) and that, therefore, the test results should have been suppressed. The county court admitted the breath test results and overruled the motion to suppress, and the district court affirmed the county court's judgment.
State law concerning tests to determine if a party has been driving under the influence provides that blood or breath tests must be performed according to methods approved by DHHS and by an individual possessing a valid permit issued by DHHS. Neb.Rev.Stat. § 60-6,201(3) (Reissue 2004).
A prerequisite to the validity of a breath test made under [Neb.Rev.Stat.] § 60-6,197(3), and consequently a prerequisite to the validity of an arrest, is that the test must be performed in accordance with the procedures approved by the Department of Health and "by an individual possessing a valid permit issued by such department for such purpose...."
(Emphasis omitted.) McGuire v. Department of Motor Vehicles, 253 Neb. 92, 96, 568 N.W.2d 471, 474 (1997), quoting § 60-6,201(3).
Hanson testified that he held a valid Class B permit to administer a breath test. A Class B permit allows its holder to "perform a chemical test to analyze a subject's breath for alcohol content by an approved method." 177 Neb. Admin. Code, ch. 1, § 001.08B. The operating rules for the holder of a Class B permit provide that to determine the alcohol content in breath, the permit holder shall "[a]scertain that maintenance and calibration checks have been performed on devices prior to testing" by reviewing "the current 40-day maintenance and calibration check performed on the testing device, including ... the results of [DHHS]' report of the periodic 190[-]day device check *343 sample." 177 Neb. Admin. Code, ch. 1, § 007.02A. The permit holder is also to maintain or have access to "the permit to perform chemical tests"; a current copy of the rules and regulations; "checklist technique forms, test record cards, or tapes produced by testing device"; and "the record of testing devices' repairs." 177 Neb. Admin. Code, ch. 1, § 007.02B. Under the rules, the permit holder is also directed to use the appropriate checklist to record the test. 177 Neb. Admin. Code, ch. 1, § 007.02C.
The checklist technique for the Intoxilyzer Model 5000 used by Hanson to test Royer's breath indicates that the first step is to verify that maintenance, repair, and calibration verification have been performed by reviewing the maintenance record. The tester then turns on the instrument and observes the subject for 15 minutes prior to testing. The "'START TEST'" button is then pushed, and the test record card is inserted. A clean mouthpiece is attached, and the subject blows into the breath tube until a sufficient sample is delivered. The digital reading is recorded, the used mouthpiece is discarded, the card is removed, and the tester turns off the instrument.
Hanson testified that he had been trained to administer the Intoxilyzer Model 5000. Prior to administering the test, Hanson observed Royer for 15 minutes, read Royer the postarrest chemical test advisement form, and completed the Intoxilyzer Model 5000 checklist. Royer agreed to provide a breath sample, and the sample was sufficient to obtain a result, which was recorded by Hanson.
The parties stipulated that the scheduled maintenance and calibration verification log included the record of maintenance for 40 days and 190 days, and they stipulated that no repairs had been made to the Intoxilyzer during the relevant time. The scheduled maintenance and calibration verification log received into evidence indicated that the maintenance and calibration checks were performed on July 15, 2005, and were valid until August 23. The Intoxilyzer was tested on May 3, 2005, using a "Simulator Check Sample." The results of this testing fell within the target value range as provided in title 177 and were valid until November 14. No repair work had been done on the Intoxilyzer during the period included in the log. Royer's breath test was administered on August 9 and was within the period covered by the maintenance and calibration checks.
Royer argues the State must prove that the officer administering the breath test checked the maintenance record in order to meet foundational requirements for the admission of the breath test. This court has held that there are four foundational requirements which must be met before the State may offer into evidence the results of a breath test:
"(1) That the testing device or equipment was in proper working order at the time of conducting the test; (2) That the person giving and interpreting the test was properly qualified and held a valid permit issued by the Nebraska Department of Health at the time of conducting the test; (3) That the test was properly conducted in accordance with a method currently approved by the Nebraska Department of Health; and (4) That there was compliance with all statutory requirements."
State v. Dail, 228 Neb. 653, 661, 424 N.W.2d 99, 104 (1988).
Royer argues that Hanson did not follow the regulations, because he did not verify whether any repairs had been performed by reviewing the repair records and because he did not review the report of the *344 periodic 190-day check of the Intoxilyzer. Although there may be a dispute about whether Hanson reviewed the repair records, any failure to do so does not invalidate the test under these circumstances. Royer stipulated that there had been no repairs to the instrument during the relevant period of time. Evidence in the record establishes that the calibration of the instrument was correct and that it was in proper working order.
We review the district court's decision for errors appearing on the record and, thus, consider whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See State v. Dittoe, 269 Neb. 317, 693 N.W.2d 261 (2005). The lower courts' findings concerning administration of the breath test are supported by competent evidence, and we find no clear error related to the admission of the breath test evidence.

ENHANCEMENT TO THIRD-OFFENSE DUI
Royer argues that his conviction was improperly enhanced to third-offense DUI because there is no record that one of his prior convictions was a final order. He claims that because the file stamp on the journal entry showing the conviction cannot be read, it is not a record of a final conviction.
We note first that this is an attempt to collaterally attack the 2002 DUI conviction. Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. State v. Keen, 272 Neb. 123, 718 N.W.2d 494 (2006). Royer's attack on the previous conviction is not based on jurisdiction and, thus, cannot be allowed.
Even if this was not a collateral attack, the document in question contains a file stamp that states "APR 30 20." The final two numbers of the year are not legible. However, the transcript also includes a date stamp of April 30, 2002, on other documents: the entry indicating that Royer pled guilty to the charge, the written order for the DUI plea, and the sentencing order. In addition, a waiver of rights document was signed and dated by Royer on April 30, 2002.
Under Neb.Rev.Stat. § 60-6,197.02(1)(a) (Reissue 2004), a conviction may be counted as a prior conviction for purposes of enhancement if it is for a violation that was committed within the previous 12 years. The document that Royer is attempting to challenge here clearly indicates the first two digits of a year: "20." Since the complaint in the current case was filed in 2005, it is obvious that the charges were filed within 12 years of the previous conviction, which occurred at some time in the 21st century.
Royer argues that the missing digits in the date could have been "06," meaning that the conviction occurred on April 30, 2006, which was after the date of the incident leading to the charges here. We find no basis for this suggestion in the record. The citation upon which the conviction was based is dated February 6, 2002, and it directed Royer to appear in court on March 4. He waived arraignment and entered a not guilty plea on March 13. Royer entered a guilty plea on April 30.
The other basis upon which a prior conviction can be challenged is the claim that the conviction was obtained in violation of the due process requirements of the state and federal Constitutions. See State v. Louthan, 257 Neb. 174, 595 N.W.2d 917 (1999). At the time of that case, state law allowed a defendant to challenge the validity of a prior DUI conviction offered for purposes of enhancement on the ground that it was obtained in violation of the *345 defendant's Sixth Amendment right to counsel. State v. Louthan, supra. However, Royer has made no such argument. In addition, the record of the prior conviction includes a waiver of rights signed by Royer and his attorney. We need not address this issue further.
The county court found the prior convictions to be valid, noting that the April 30 date in question was on the same page as the April 30, 2002, sentencing. The district court determined that although the final two numbers of the year were not legible on the file stamp, there was no indication that the file stamp was placed on the record at any time other than April 30, 2002. The district court concluded that the file-stamp date was April 30, 2002, and that the prior conviction could be used to enhance Royer's sentence. We find no error on the record concerning the prior convictions.

CONCLUSION
In order to compel a driver to submit to field sobriety tests, a law enforcement officer need only have a reasonable, articulable suspicion that the driver is under the influence of alcohol or other drugs in violation of § 60-6,196. The requirements of title 177 were followed in this case, and the enhancement to third-offense DUI was proper. The judgment of the district court, which affirmed the judgment of the county court, is affirmed.
AFFIRMED.