762 N.W.2d 328 (2009)
17 Neb. App. 329
STATE of Nebraska, Appellee,
v.
Jeffery PICKINPAUGH, Appellant.
No. A-08-499.
Court of Appeals of Nebraska.
January 20, 2009.
*331 Justin J. Cook, of Lincoln Law, L.L.C., Lincoln, for appellant.
Jon Bruning, Attorney General, and Nathan A. Liss for appellee.
INBODY, Chief Judge, and SIEVERS and MOORE, Judges.
SIEVERS, Judge.
Jeffery Pickinpaugh was convicted of driving under the influence of alcohol and sentenced to 6 months' probation with several conditions. His driver's license was also revoked for 60 days. The district court affirmed the county court's order, and Pickinpaugh appealed to this court. For the reasons set forth herein, we affirm. Pursuant to our authority under Neb. Ct. R.App. P. § 2-111(B)(1), we have ordered this case submitted for decision without oral argument.

FACTUAL AND PROCEDURAL BACKGROUND
On March 16, 2007, Pickinpaugh was pulled over at 4:30 a.m. by Officer Gerald Klinetobe of the Wayne Police Department. Klinetobe had received a call from dispatch saying a citizen, Javon McNeal, witnessed a one-car accident involving a utility pole. McNeal identified Pickinpaugh's vehicle as the vehicle that hit the pole and provided officers with the license plate number of the car. McNeal followed Pickinpaugh's vehicle after such accident and continued to do so until Klinetobe arrived so she could point out the vehicle to the officer. Klinetobe noticed that there was damage to the passenger-side front fender of Pickinpaugh's vehicle and that the license plate on his car matched the one given earlier by McNeal. Klinetobe then signaled Pickinpaugh to pull over, and Pickinpaugh pulled into a church parking lot. Klinetobe asked Pickinpaugh whether he had hit a utility pole, and he answered in the affirmative. Klinetobe noticed Pickinpaugh had bloodshot and watery eyes, slurred speech, and an odor of alcohol. Pickinpaugh admitted that he had *332 "quite a few" drinks that evening. Klinetobe began to administer field sobriety tests, but at that time, there was a group of people gathering in the parking lot of the church to leave for a trip, and Pickinpaugh refused to do the tests in front of them. Klinetobe arrested Pickinpaugh for leaving the scene of an accident and the "pending investigation" for driving under the influence, handcuffed him, and transported him to the police station to conduct the field sobriety tests. Pickinpaugh failed all three tests Klinetobe had him perform. About 1½ hours after the initial stop, Pickinpaugh submitted to a chemical test, which showed he had .135 of a gram of alcohol per 210 liters of breath.
Pickinpaugh was charged with driving while under the influence of alcohol, a violation of Neb.Rev.Stat. § 60-6,196 (Reissue 2004) with the penalty prescribed by Neb.Rev.Stat. § 60-6,197.03(1) (Cum.Supp. 2006), a Class W misdemeanor. Pickinpaugh was also charged with failure to stop following an accident involving property damage, a Class II misdemeanor and violation of Neb.Rev.Stat. § 60-696 (Cum. Supp.2006). Pickinpaugh filed a motion to suppress/motion in limine on July 12, 2007, for suppression of all observations made of and statements by Pickinpaugh, results of his chemical test, and any derivative evidence, because his arrest violated his Fourth and Fifth Amendment rights and the officer lacked reasonable grounds to believe Pickinpaugh was operating a motor vehicle while under the influence of alcohol. The county court for Wayne County overruled this motion. The county court conducted a bench trial on October 1, made findings of fact, and found Pickinpaugh guilty of driving under the influence of alcohol but not guilty of failure to stop following an accident, because the State failed to show damage to the pole as required by the statute. Pickinpaugh was sentenced to 6 months' probation with conditions, a fine, and a driver's license suspension for 60 days. Pickinpaugh appealed to the district court for Wayne County, and the conviction was affirmed on April 16, 2008. Pickinpaugh appeals the district court's ruling to this court.

ASSIGNMENTS OF ERROR
Pickinpaugh assigns as error (1) the county court ruling that allowed the testimony of the arresting officer regarding the informant to establish reasonable suspicion for the stop, (2) the district court ruling that evidence of the field sobriety tests was admissible for purposes of supporting probable cause for Pickinpaugh's arrest, and (3) the district court ruling that an arrest for driving under the influence was not a prerequisite before requiring Pickinpaugh to submit to a chemical test of his breath under Nebraska's implied consent law.

STANDARD OF REVIEW
[1] Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. State v. Trampe, 12 Neb.App. 139, 668 N.W.2d 281 (2003).
[2, 3] A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. State v. Osborn, 250 Neb. 57, 547 N.W.2d 139 (1996). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. Id.
[4] Pickinpaugh moved to suppress all of the evidence resulting from his arrest, including the results of the chemical test, both pretrial and at the start of the October *333 1, 2007, bench trial. When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. State v. Ball, 271 Neb. 140, 710 N.W.2d 592 (2006).
[5, 6] Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. State v. Bowers, 250 Neb. 151, 548 N.W.2d 725 (1996). Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. Big John's Billiards v. Balka, 260 Neb. 702, 619 N.W.2d 444 (2000).

ANALYSIS

Reasonable Suspicion for Investigatory Stop.
[7, 8] Pickinpaugh alleges in his brief that the motion to suppress should not have been denied, because Klinetobe did not have reasonable suspicion to stop his vehicle, in that there was no factual foundation to explain the information Klinetobe received from dispatch. He argues that absent reasonable suspicion for the investigatory stop, such stop was improper, and the motion to suppress was improperly denied. Thus, we must determine whether there was reasonable suspicion using the appropriate standard of review.
[D]eterminations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search [are reviewed with] a two-stage standard in which the ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.
State v. Soukharith, 253 Neb. 310, 318, 570 N.W.2d 344, 352 (1997).
[9-14] Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. State v. Ellingson, 13 Neb.App. 931, 703 N.W.2d 273 (2005). A reasonable suspicion to stop a vehicle cannot be found when there is no factual foundation explaining the source of the information being relayed between officers. State v. Mays, 6 Neb.App. 855, 578 N.W.2d 453 (1998), overruled on other grounds, State v. Anderson, 258 Neb. 627, 605 N.W.2d 124 (2000). Several prior cases have dealt with the adequacy of reports to find such factual foundation for reasonable suspicion from citizen informants, as was the case with the information from McNeal here.
"An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been, is, or is about to be engaged in criminal activity." State v. Ege, 227 Neb. 824, 826, 420 N.W.2d 305, 308 (1988) (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). The factual basis for the stop need not be the officer's personal observations alone, but may arise from information provided by another person. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Ege, supra. When the information providing the factual basis for the stop is furnished by another person, it must contain sufficient indicia of reliability. State v. Ege, supra. A detailed eyewitness report of a crime by an informant provides its own indicia of reliability because a citizen informant *334 who has personally observed the commission of a crime is presumed to be reliable, State v. Ege, supra.

State v. White, 15 Neb.App. 486, 493-94, 732 N.W.2d 677, 684 (2007).
Because we must evaluate all of the facts and circumstances leading to Pickinpaugh's stop, we identify the specific information available to Klinetobe at the time. When Klinetobe signaled Pickinpaugh to pull over, he had the following information: He had a report from dispatch, based on a call from a citizen informant, that there had been a one-car accident involving a utility pole and that the vehicle had left the scene of the accident; he had observed damage to Pickinpaugh's vehiclethe front passenger-side fender was dented and rubbing on the tire; and McNeal was present at the scene to confirm that the car in front of her was the one she had witnessed in the accident. McNeal, properly characterized as a citizen informant, had called the police to report an accident, identified herself, provided identifying information about the vehicle in the accident, followed the vehicle in the accident until police arrived, and pointed out the vehicle to the officer. If not an actual crime, she certainly had witnessed suspicious behavior and was willing to identify herself, provide details of the accident, and follow the vehicle and identify such to the officer. Therefore, based on the circumstances of her report, her actions clearly support the reliability of such report; plus, as a citizen informant, she is presumed to be reliable.
Pickinpaugh relies on State v. Mays, supra, where the court found a lack of probable cause when the record failed to reflect from whom the police officer received the tip leading to the stop of the defendant's vehicle. This case can easily be distinguished from the instant case because, as stated above, McNeal did identify herself to dispatch and to Klinetobe, and thus, there is indicia of reliability, as well as a presumption thereof, that is not present in cases involving anonymous tips to the police. McNeal is clearly a citizen informant who personally witnessed a crime and reported it, and thus she is presumptively reliable. See State v. Detweiler, 249 Neb. 485, 544 N.W.2d 83 (1996).
There was clearly a sufficient factual basis for McNeal's report for Klinetobe to perform an investigatory stop of Pickinpaugh based upon such report. Thus, the investigatory stop was proper because there was reasonable suspicion, and the motion to suppress evidence was properly denied. Pickinpaugh's argument lacks merit.

Admission of Field Sobriety Tests.
Pickinpaugh argues that because he was in custody and not advised of his Miranda rights, evidence of the field sobriety tests conducted at the police station should have been suppressed and, thus, inadmissible for purposes of supporting probable cause for his arrest for driving under the influence. Pickinpaugh claims that the failure to advise him of his Miranda rights violated his constitutional rights. Klinetobe testified at the suppression hearing that he did not advise Pickinpaugh of his Miranda rights until after the field sobriety and chemical tests were administered and he was arrested. Klinetobe also testified that Pickinpaugh was not free to leave and was in a custodial situation, having already been arrested for leaving the scene of the accident and transported to the police station, when the field sobriety and chemical tests were administered. The safeguards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were intended to protect the Fifth Amendment right against self-incrimination by countering the compulsion that inheres in custodial *335 interrogation. State v. Relford, 9 Neb. App. 985, 623 N.W.2d 343 (2001).
[15-17] Miranda, supra, implicates only statements that are both testimonial in nature and elicited during custodial interrogation. State v. Bowers, 250 Neb. 151, 548 N.W.2d 725 (1996). Therefore, both elements must be present for Miranda warnings to be necessary, and our analysis proceeds on the basis that Pickinpaugh was in custody. Field sobriety tests may be justified by a police officer's reasonable suspicion based upon specific articulable facts that the driver is under the influence of alcohol or drugs. State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008). A police officer has a reasonable suspicion that a driver of a lawfully stopped vehicle is under the influence of alcohol, and therefore an officer can detain the driver after the traffic stop, where the officer observed that the driver's eyes were watery and bloodshot, the officer detected a strong odor of alcohol on the driver's breath, and the driver admitted to consuming alcoholic beverages. See id. Klinetobe's administration of field sobriety tests in this case was clearly warranted and lawful. Klinetobeafter witnessing Pickinpaugh's bloodshot eyes and slurred speech, listening to his admission that he had consumed alcohol that evening, and having the information about his encounter with the light polehad ample reasonable suspicion to administer the field sobriety tests. Klinetobe properly began to administer such tests as Pickinpaugh was detained in the church parking lot, but was disrupted, through no fault of his own, by the crowd gathering there, and Klinetobe arrested Pickinpaugh for leaving the scene of an accident. Therefore, Pickinpaugh was in a custodial situation at the police station when the field sobriety tests were performed.
[18-20] Despite the fact that Pickinpaugh was in custody, we hold that the results of his field sobriety tests were not testimonial in nature and that Miranda warnings were not required before the field sobriety tests were administered. Evidence obtained from a driver by testing body fluids in the implied consent context is not testimonial or communicative in nature and does not fall within the constitutional right against self-incrimination. State v. Green, 229 Neb. 493, 427 N.W.2d 304 (1988). We note that Miranda warnings are not required before a law enforcement officer's request that a driver submit to a chemical analysis under Nebraska's implied consent law. Id. See, also, Fulmer v. Jensen, 221 Neb. 582, 379 N.W.2d 736 (1986). That said, we note that there is no precedent in Nebraska declaring whether the results of field sobriety tests are testimonial or nontestimonial in nature for purposes of Miranda, supra. We found such tests to be nontestimonial, and therefore not subject to Miranda safeguards, in State v. Bowers, No. A-94-1243, 1995 WL 749709 (Neb.App. Dec. 19, 1995) (not designated for permanent publication). The Nebraska Supreme Court examined our decision on a petition for further review, but said it did not need to decide whether the results were testimonial or not, because the defendant in that case was not in a custodial situation for Miranda purposes, making the evidence of the tests admissible in the absence of Miranda warnings. See State v. Bowers, 250 Neb. 151, 548 N.W.2d 725 (1996). But here, we have a custodial situation.
Other courts have specifically addressed this issue, and many have determined that the results of field sobriety tests are nontestimonial because they are considered observations of the suspect's physical condition and performance and do not result in communication that revealed subjective knowledge by the defendant. See, Vanhouton *336 v. Commonwealth, 424 Mass. 327, 676 N.E.2d 460 (1997); State v. Zummach, 467 N.W.2d 745 (N.D.1991); State v. Fasching, 453 N.W.2d 761 (N.D.1990); State v. Marks, 644 N.W.2d 35 (Iowa App. 2002). See, also, State v. Mellett, 642 N.W.2d 779 (Minn.App.2002). These courts have determined that Fifth Amendment protections provided by Miranda warnings are inapplicable to the results of field sobriety tests because such are nontestimonial, and we agree.
Furthermore, in State v. Royer, 276 Neb. 173, 753 N.W.2d 333 (2008), the Nebraska Supreme Court held that for an investigating officer to conduct field sobriety tests, only reasonable suspicion, not probable cause, was required, and we have found that in this case, the officer had ample reasonable suspicion that Pickinpaugh was driving under the influence before the field sobriety tests were given. And because we hold that field sobriety tests are nontestimonial in nature, the fact that Pickinpaugh was in custody when the tests were actually administered does not mean that Miranda warnings were a precondition to the admission in evidence of the tests. Accordingly, we find the district court properly affirmed the county court's overruling of Pickinpaugh's motion to suppress the field sobriety tests, because the Miranda warnings were not required even if Pickinpaugh was in custody.

Arrest for Driving Under Influence as Prerequisite for Submission to Chemical Test Under Implied Consent Law.
[21] Pickinpaugh argues that he should have been arrested for driving under the influence before being required to submit to the chemical test and that therefore, the State did not follow the proper procedures under Nebraska's implied consent law. This argument has no merit. Neb.Rev. Stat. § 60-6,197 (Reissue 2004) states in relevant part:
(4) Any person involved in a motor vehicle accident in this state may be required to submit to a chemical test of his or her blood, breath, or urine by any peace officer if the officer has reasonable grounds to believe that the person was driving or was in actual physical control of a motor vehicle on a public highway in this state while under the influence of alcoholic liquor or drugs at the time of the accident.
As discussed above, Pickinpaugh was clearly being investigated for his role in a one-car accident earlier in the morning. Such accident was reported by a citizen informant to dispatch and Klinetobe. As such, Klinetobe clearly had statutory authority to ask Pickinpaugh to submit to a chemical test.
Furthermore, § 60-6,197(2) states that an officer can require a person arrested for any offense arising out of acts alleged to have been committed while driving under the influence to submit to a chemical test if there are reasonable grounds to believe the person was driving a vehicle under the influence of alcohol. As detailed above, Klinetobe's observations of Pickinpaugh that morning clearly constitute reasonable grounds for Klinetobe to believe that Pickinpaugh was operating a vehicle under the influence of alcohol. In addition, Klinetobe had arrested Pickinpaugh for the offense of failure to stop following an accident involving property damage. Pickinpaugh's claim that he had to have been arrested for driving under the influence is an incorrect statement of the law, and Pickinpaugh had been arrested for an offense when the chemical test was administered. As such, Pickinpaugh's assignment of error has no merit, and the district court's ruling affirming the county court's order was proper.

*337 CONCLUSION
Finding no merit to Pickinpaugh's assignments of error, we affirm the findings of the district court.
AFFIRMED.