STATE OF NEBRASKA, APPELLEE, V. DALE E. GREEN, APPELLANT.

389 N.W.2d 557

Filed June 27, 1986.   No. 85-830.

Tad D. Eickman, for appellant.

Robert M. Spire, Attorney General, and Janie C. Castaneda, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Following a trial by jury in the county court, the defendant was found guilty of driving while under the influence of alcohol. He was fined and sentenced to a term in jail. On appeal to the district court his conviction was affirmed. In this court he assigns as error the reception into evidence of the result of the preliminary breath test without proper foundation, and the reception into evidence of the result of the blood test without proper foundation. We affirm.

On November 20, 1984, after observing the defendant driving on the highway at an extremely slow rate of speed and crossing the centerline at least two times, a trooper of the Nebraska State Patrol stopped the defendant. The trooper observed that the defendant had watery eyes, spoke with slurred speech, had an odor of alcohol about him, could not

locate his driver's license in his billfold, and staggered when he tried to walk. A preliminary breath test was administered. The defendant was then placed under arrest and was taken to a hospital where a blood sample was drawn. Later, field sobriety tests were administered, which the defendant failed.

As to the issue concerning the preliminary breath test, defendant argues only lack of foundation under *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980), and *State v. Kolar*, 206 Neb. 619, 294 N.W.2d 350 (1980). He does not cite us to *State v. Smith*, 218 Neb. 201, 352 N.W.2d 620 (1984), which stated that it is error to admit evidence of the result of a preliminary breath test as evidence of a violation of the statute prohibiting the operation of a motor vehicle while intoxicated. *Smith* held, however, that such evidence in that case was cumulative and nonprejudicial.

The record in the present case does not disclose, strictly speaking, that the result of the preliminary breath test was offered or received in evidence. The prosecuting attorney did ask the arresting trooper the following question: "And, if — if the test — if the machine reads out that other than fail light, you then let the person go without arresting them?" to which an objection was sustained. Later on, the following questions and answers appear in the record, to which no objections were made:

> Q. After you had completed the — strike that. Did you then administer the preliminary breath test to Mr. Green?
> A. Yes, I did.
> Q. And, when that test was completed what did you do?
> A. I advised Mr. Green that he was under arrest for driving under the influence.

Although a preliminary breath test advisement form and checklist to show completion of the test was received into evidence, we are unable to find anything in the record, beyond the testimony set forth above, suggesting what the result of such test might have been. Contrary to our rules, the defendant has failed to make appropriate references to the record of any of the facts or argument contained in his brief. See Neb. Ct. R. of Prac. 9C (rev. 1983).

However, even assuming that such a test result was

erroneously admitted, it would have been cumulative and harmless error under *State v. Smith, supra.* Besides the description of defendant's actions given by the arresting trooper, as previously indicated, he testified to the following observations made of the defendant during the administration of field sobriety tests:

Q. Okay. Can you describe how Mr. Green performed these particular sobriety tests?

A. The finger-to-nose test he couldn't keep his head tilted back without nearly falling over. So, we allowed him even to put his head in an upright position, he never came close to his nose with either hand, with either index finger, I should say.

Q. What about the walking test, walking a straight line?

A. He was uncapable [sic] of putting one foot in front of the other one and walking a line without staggering off to one side or the other.

Q. How about the test of picking up a coin off the floor?

A. He couldn't begin to do this test without catching himself with both hands.

Q. When he was doing the — attempting to perform the finger-to-nose test, when he placed his head back, did anyone have to catch him to keep him from falling?

A. Yes, I did.

Finally, there was evidence received of a blood alcohol test result of .165 percent.

Defendant's argument that there was insufficient foundation to receive the result of the blood test is also without merit. It is his contention that the testimony of Margaret Vencil of the previously mentioned .165-percent blood alcohol level was without foundation because she did not know where the formula used originated; she had no independent knowledge that the substance in the blood vials was an anticoagulant and that the substance introduced into the syringe to speed up vaporization of the blood was in fact potassium carbonate; and she was not required to furnish other foundational facts, such as her possession of a valid permit, prior to her testimony.

Our examination of the record discloses that the testimony of

the witness Vencil describing the process by which she arrived at a blood alcohol level was detailed and accurate. She agreed that the formula was not set forth in the rules prescribed by the Nebraska Department of Health but, rather, was the method she was taught and told to use by her chemist supervisor. She testified that the vials contained an anticoagulant. The witness made the observation that the blood storage vials contained an anticoagulant. There appears to be no foundation for such a statement, but the important fact was that she testified from sight that the blood had not coagulated.

During cross-examination by the defendant, the witness Vencil testified that the substance she used was potassium carbonate and she knew that to be a fact because it came from a jar in her laboratory labeled as such. We are not inclined to require an examining chemist doing blood alcohol testing to go behind the label on a container of a substance used regularly during the course of such employee's duties, absent circumstances which would indicate the necessity for such inquiry.

In any event, all of those claimed "deficiencies" relate to techniques employed by the examiner and are of no foundational consequence, but only affect the weight and credibility of the testimony. *State v. Miller*, 213 Neb. 274, 328 N.W.2d 769 (1983).

The record does disclose that Margaret Vencil did in fact possess a valid permit to conduct blood alcohol tests. That permit, together with the worksheet, the blood alcohol report, a copy of Neb. Admin. Code tit. 177, ch. 1 (1980 & 1981), and the remains of the blood container kit, was received in evidence immediately following the testimony of the witness.

Defendant argues that the law requires such foundational evidence to precede the offer of an expert opinion. He cites no law to us. We do not agree.

The witness Vencil had testified during her introductory examination that she possessed a Class A permit to do blood alcohol testing. She also testified during the same preliminary period that she held in her hands a copy of title 177 of the rules and regulations of the Department of Health laboratory which contained the rules and regulations for testing of blood and

which she followed in doing blood alcohol testing.

Certainly, the foundational requirements were met in this case so as to pass muster on the requirements of *State v. Brittain*, 212 Neb. 686, 325 N.W.2d 141 (1982). That case states in effect that a determination that a blood alcohol test was taken and properly performed as provided by statute generally rests within the sound discretion of the trial court and will not be reversed except for a clear abuse of discretion.

The judgment of the district court was correct and it is affirmed.

AFFIRMED.