STATE OF NEBRASKA, APPELLEE, V.
ROWLAND W. TRAMPE, APPELLANT.

668 N.W.2d 281

Filed September 2, 2003.   No. A-02-826.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Jon Bruning, Attorney General, and Mark D. Raffety for appellee.

HANNON, INBODY, and MOORE, Judges.

MOORE, Judge.

## I. INTRODUCTION

Rowland W. Trampe appeals from a Buffalo County District Court order that affirmed his conviction for driving under the influence of alcohol (DUI), second offense. On appeal, Trampe alleges errors in connection with the receipt of test results showing his blood alcohol content and in the enhancement of his sentence based upon a prior conviction. For the reasons set forth herein, we affirm in part, and in part reverse and remand for further proceedings.

## II. BACKGROUND

On September 11, 2001, Trampe was charged in the county court for Buffalo County, Nebraska, with DUI as a subsequent offense to an earlier DUI conviction. Trampe was later convicted in a jury trial held on January 7, 2002, and was sentenced on February 14, at which time the State introduced evidence of the prior DUI conviction as exhibit 14. The exhibit consisted of a certificate of transcript from the Buffalo County Court, a copy of a 1996 DUI citation, and a copy of a 1996 conviction and sentence. Trampe was sentenced for a Class W misdemeanor (second offense) to 9 months' probation and ordered not to operate a motor vehicle for a period of 1 year. Trampe was also fined $500 and ordered to serve 10 days in the Buffalo County Detention Center.

Trampe appealed to the district court for Buffalo County and alleged that the trial court erred in (1) receiving the test results of Trampe's blood alcohol concentration over his objection; (2) giving the jury instruction specifically objected to by Trampe; (3)

failing to give the jury instructions proposed by Trampe; (4) receiving testimony regarding various field sobriety tests and the interpretation thereof over Trampe's objection; (5) making rulings on the admissibility of evidence (field sobriety test and alcohol concentration test results) as excepted to in the bill of exceptions; (6) determining that the individual testing Trampe's blood complied with 177 Neb. Admin. Code, ch. 1, §§ 005.01, 006.02, and 006.06 (1998); (7) determining that Trampe's DUI charge should be enhanced for sentencing; and (8) receiving documentation (exhibit 14) showing Trampe's prior conviction for DUI.

On June 5, 2002, this matter came before the district court. The evidence presented consisted of the transcript and the bill of exceptions from the county court proceedings, which bill comprised a record of the testimony and exhibits. Thereafter, on the same date, the district court entered an order stating in part that Trampe

> offered to the Court several different assignments of error arising from his conviction [and that a]t the time of the hearing before this Court [Trampe] essentially abandoned those arguments other than the argument that the trial court err[ed] in admitting the tests [sic] results of the concentration of alcohol in [Trampe's] blood.

The district court affirmed the decision of the county court. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

Trampe asserts on appeal, restated, that the trial court erred in the receipt of the test results that showed Trampe's blood alcohol concentration because (1) the person drawing Trampe's blood did not comply with the requirements of § 005.01C and was not qualified pursuant to Neb. Rev. Stat. § 60-6,201 (Cum. Supp. 2000) and (2) the person testing Trampe's blood did not comply with § 006.06. Trampe also assigns error to the trial court's enhancement of his sentence.

## IV. STANDARD OF REVIEW

Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than as a trial court, and its review is limited to an examination of the

county court record for error or abuse of discretion. Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *State v. Miller*, 11 Neb. App. 404, 651 N.W.2d 594 (2002); *State v. Hopkins*, 7 Neb. App. 895, 587 N.W.2d 408 (1998).

## V. ANALYSIS

### 1. ADMISSION OF TEST RESULTS

#### (a) Drawing Blood—Title 177

Trampe first asserts that the trial court erred in receiving the test results that showed his blood alcohol concentration because the person drawing Trampe's blood did not comply with § 005.01C. Specifically, Trampe argues that § 005.01C was not complied with in that the person who drew Trampe's blood, Kaylyn Rogers, did not initial the specimen container.

Section 005.01C requires: "Specimen containers shall be labeled and shall show the following information on the label: name of person tested, date and time of specimen collection, and initials of person collecting the specimen."

Rogers testified that she is employed by Good Samaritan Hospital as a certified medical technologist and is qualified to draw blood. She testified that the hospital has a standard operating procedure for drawing blood and described that a "legal blood testing kit" is used which requires that two vials of blood be obtained and that each is mixed thoroughly with an anticoagulant. Each vial is then labeled with the subject's name, the date and time of the draw, and the initials of the person who drew the blood. Evidence tape is then placed across the top of each vial, and the vials are put in a small plastic bag which is sealed with evidence tape. The bag is then given to a police officer, who signs or initials the seal on the bag and writes the case number on it, after which time the information concerning the draw is entered into a computer system. The bag is then placed in a locked refrigerator. Rogers indicated that she maintains custody of such vials until they are placed in the refrigerator. With regard to Trampe, Rogers testified that she was the person who drew Trampe's blood on the evening of August 18, 2002, and that she followed all of the hospital's procedure as described above.

Rogers stated that she labeled the vials of Trampe's blood with Trampe's name and the date and time of the draw, placed her initials on the vials, and then gave the bag containing the vials to a police officer so that he could place his signature on the seal of the bag. Rogers testified that she then entered the information concerning the blood draw into the computer system and placed the bag in the refrigerator.

Based upon our review of the record, we fail to see the merit in Trampe's argument. Rogers' testimony clearly demonstrated that she complied with the requirements of § 005.01C by labeling the vials of blood with Trampe's name, the date and time when she drew the blood, and her initials. This assignment of error is without merit.

### (b) Drawing Blood—§ 60-6,201

Trampe next argues that the trial court erred in receiving the test results of his blood alcohol concentration because Rogers, the person who drew his blood, was not qualified under § 60-6,201(3). Specifically, Trampe argues that there was insufficient evidence to show that Rogers was employed by a facility that was properly certified; he contends that Rogers' testimony that she was an employee of Good Samaritan Hospital, in addition to the court's receipt of exhibit 19—a copy of the certificate of laboratory accreditation issued by the U.S. Department of Health and Human Services, Health Care Financing Administration, to Good Samaritan Hospital—was inadequate.

The drawing of blood and the admissibility of test results are controlled by § 60-6,201, which provides in pertinent part:

> (3) To be considered valid, tests of blood . . . shall be performed according to methods approved by the Department of Health and Human Services Regulation and Licensure and by an individual possessing a valid permit issued by such department for such purpose, *except that a physician, registered nurse, or other trained person employed by a licensed health care facility or health care service . . .* to withdraw human blood for scientific or medical purposes, acting at the request of a peace officer, may withdraw blood for the purpose of a test to determine the alcohol concentration . . . and no permit from the department shall be

required for such person to withdraw blood pursuant to such an order.

(Emphasis supplied.)

At trial, exhibit 19, the copy of the original certificate of accreditation authorizing Good Samaritan Hospital's laboratory under the "Clinical Laboratory Improvement Amendments" (CLIA) to the federal "Public Health Service Act," was received into evidence over Trampe's objections based upon foundation and hearsay. The county court found the copy of the certificate to be genuine after comparing the copy with the original, which was made available by the State at trial, and found that it fell within the self-authentication provisions of Neb. Rev. Stat. § 27-902 (Reissue 1995), which provides:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . .

(1) A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution . . . .

It was undisputed that exhibit 19 was a correct and accurate copy of the original certificate, which bore a seal and the signature of a director of the U.S. Department of Health and Human Services and which authorized Good Samaritan Hospital to "accept human specimens for the purposes [sic] of performing laboratory examinations." Thus, the trial court did not err in receiving exhibit 19 pursuant to § 27-902(1). We further note that this copy of the certificate could have also been admitted under Neb. Rev. Stat. § 27-1005 (Reissue 1995) as a copy of an official record. Under this provision, a copy of an official record is admissible if it is certified as correct under § 27-902 or if a witness is called and testifies that after comparing the copy with the original, he or she opines that it is correct and accurate. See *State v. Rice*, 214 Neb. 518, 335 N.W.2d 269 (1983).

At trial, Shannon Klingelhoefer, an employee of Good Samaritan Hospital who tested Trampe's blood, testified regarding exhibit 19 after it had been received into evidence. She

identified the original certificate, testified that she was familiar with exhibit 19, and testified that Good Samaritan Hospital was a CLIA-accredited laboratory, to which testimony Trampe objected based upon foundation. The following dialog ensued:

[Counsel for the State:] Ms. Klingelhoefer, are you familiar with Exhibit 19 and the fact that Good Samaritan Hospital is a CLIA certified hospital?

[Counsel for Trampe]: Object again on foundation your honor. I think she can testify that what she brought with her is something but I don't know that she has foundation to go into how.

THE COURT: It is overruled, she can answer.

[Klingelhoefer:] Can you state the question again?

[Counsel for the State:] Are you familiar with Exhibit #19 and the fact that Good Samaritan Hospital is a CLIA certified hospital — or a CLIA certified laboratory?

[Counsel for Trampe]: It is a compound question your honor.

THE COURT: It was, sustained.

[Counsel for the State:] Are you familiar with Exhibit #19?

[Klingelhoefer:] Yes.

[Counsel for the State:] And are you aware that Good Samaritan Lab is a CLIA accredited laboratory?

[Klingelhoefer:] Yes.

[Counsel for Trampe]: Object on foundation. Whether she is aware of it or not is really irrelevant. It is whether they are or aren't.

THE COURT: I get your point but the objection will be overruled. The answer will stand.

While we agree with Trampe that Klingelhoefer's awareness of whether the hospital had an accredited laboratory is not relevant, the properly admitted evidence shows that the hospital was a licensed facility as required by § 60-6,201. This assignment of error is without merit.

### (c) Testing Blood—Title 177

Trampe next claims that the trial court erred in receiving the test results of his blood alcohol concentration because

Klingelhoefer, the person who tested Trampe's blood, did not comply with § 006.06, which addresses the inspection, maintenance, and repair of laboratory instruments. Specifically, Trampe argues that there was "absolutely no evidence" that the machine used to test his blood alcohol concentration had been maintained according to the machine's operator's manual as required by § 006.06. Brief for appellant at 13. In support of his argument, Trampe relies on *State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998), and reiterates a statement made therein by this court that " 'general testimony is a conclusion and is insufficient to show that [t]itle 177 requirements were complied with.' " (Emphasis omitted.) Brief for appellant at 14. In particular, Trampe cites noncompliance with §§ 006.06A and 006.06D. Section 006.06A provides:

> Maintenance of instruments shall be performed as prescribed in the operators manual that is intended for an instrument which may be utilized to produce results with a technique in this regulation. Maintenance shall be performed by a person trained to do maintenance. Maintenance may also be performed by a manufacturer's representative.

Section 006.06D provides:

> A Class A permit holder shall document that instrument maintenance has occurred with at least the frequency recommended by the manufacturer. A written maintenance plan shall be submitted with a Class A application. Revised maintenance plans, manufacturer's name, and the name of the laboratory instrument shall be submitted to the Department of Health and Human Services Regulation and Licensure whenever any changes occur with a maintenance plan or the use of a different instrument. Revised maintenance plans, or changing the use of a laboratory instrument[,] shall be reported using Attachment 8. The application shall be of the form as shown in Attachment 8, attached and incorporated herein by reference.

Klingelhoefer testified that she was employed by Good Samaritan Hospital as a medical technologist and holds a Class A permit issued by the State of Nebraska which allows her to perform legal blood alcohol tests. Klingelhoefer further indicated that the hospital maintains a policy and procedure for testing

blood samples that is in accordance with the requirements set forth in title 177.

With regard to the specific machine used for legal blood alcohol tests, Klingelhoefer stated that the hospital utilizes an Abbott TDxFLx machine that requires daily, weekly, and monthly maintenance which is prescribed by the machine's operator's manual. Klingelhoefer stated that daily maintenance involves cleaning the machine's probe and priming the machine to make sure that its parts are functioning properly, with weekly and monthly maintenance requiring a more detailed cleaning. Klingelhoefer testified that prior to her use of the machine on any occasion, she confirms that all of the required maintenance has been done. She further stated that on the date when she tested Trampe's blood alcohol level, she adhered to the requirements of title 177 and checked the machine's maintenance log to make sure that all of the maintenance was up to date.

We find the case *State v. Green*, 223 Neb. 338, 389 N.W.2d 557 (1986), applicable. In *Green*, it was alleged that there was insufficient foundation for the court to receive the appellant's blood alcohol test results because the testimony of the chemist who tested his blood was without foundation in that the chemist did not know where the formula used in the test originated and had no independent knowledge that the substance in the blood storage vials used in the test was an anticoagulant or that the substance used in a syringe was potassium carbonate. The Nebraska Supreme Court stated that it was "not inclined to require an examining chemist doing blood alcohol testing to go behind the label on a container of a substance used regularly during the course of such employee's duties, absent circumstances which would indicate the necessity for such inquiry." 233 Neb. at 341, 389 N.W.2d at 559-60. The Nebraska Supreme Court held in *Green* that any deficiencies in the techniques used to test the blood alcohol level in DUI cases generally are of no foundational consequence, but affect only the weight and credibility of the testimony. With regard to Trampe's reliance on *State v. Hiemstra*, 6 Neb. App. 940, 579 N.W.2d 550 (1998), we articulate our disapproval of *Hiemstra* to the extent that it suggests that the issues surrounding any deficiencies in the techniques for testing blood under title 177 are of foundational consequence rather than going

only to the weight and credibility of the evidence as indicated by *Green, supra.*

Based upon our review of the record, we find sufficient evidence to show that maintenance requirements were complied with and that the trial court did not err in receiving the test results. This assignment of error is without merit.

## 2. SENTENCE ENHANCEMENT

Finally, Trampe argues that the trial court erred by enhancing his sentence because the evidence before the court did not support enhancing his sentence.

A review of the record in the instant case reveals two exhibits both marked "Exhibit #14." One of the exhibits 14 is entitled "Legal Alcohol on Body Fluid" and was received into evidence during Trampe's trial on January 7, 2002, while the other exhibit 14 (evidence of a prior conviction) was received at Trampe's sentencing hearing on February 14, for enhancement purposes. However, the exhibit 14 received for enhancement purposes was not included in the bill of exceptions from the county court proceedings presented to the district court, even though Trampe's praecipe filed in the county court specifically requested "[a]ll exhibits offered and/or received at the sentencing held herein on February 14, 2002." Thus, the evidence received at the district court proceedings on June 5 did not contain the exhibit 14 that was received for enhancement purposes. We further note, in conjunction with the district court's order of July 5, that the district court did not make any specific findings with regard to the enhancement issue, but, rather, stated that Trampe "essentially abandoned" all of his arguments with the exception of the admission of his blood alcohol test results.

On December 11, 2002, the State filed a motion for remand to properly prepare the record to include both exhibits 14, to which motion Trampe objected. On January 7, 2003, a second bill of exceptions was filed with this court and contained the exhibit 14 received at Trampe's sentencing hearing, but there is no indication that this bill of exceptions was ever filed with the district court prior to its being filed with this court. On February 9, this court denied the State's motion for remand, indicating that this court reviews only the record presented to the district

court when the latter sits as an intermediate court of appeals and that thus, this court cannot change the record presented to the district court.

It is clear that the district court did not have the exhibit 14 relating to Trampe's prior conviction before it when it reviewed Trampe's current conviction and sentence. It is also clear that Trampe raised the admission of this exhibit and the enhancement of his sentence in the county court as errors before the district court. The bill of exceptions from the district court appeal merely shows the offer and receipt of the bill of exceptions from the county court, which bill of exceptions does not contain the exhibit 14 relating to Trampe's prior conviction. Counsel for both parties presented argument to the district court; however, the argument was not recorded by the court reporter. Thus, there is no basis in the record for the district court's conclusion that Trampe abandoned these assigned errors in his appeal to the district court. It is clear that the district court did not consider the issues relating to the enhancement of Trampe's conviction, because had it done so, it would have discovered that the record did not contain the exhibit 14 relating to Trampe's prior conviction.

In our appellate review of a matter appealed from a county court to a district court, we can consider only such evidence as was presented to the district court in its intermediate review of the county court judgment. See *State v. Cardona*, 10 Neb. App. 815, 639 N.W.2d 653 (2002) (both district court and higher appellate court generally review appeals from county court for error appearing on record). Because the district court did not address the merits of the issues relating to the enhancement of Trampe's sentence and because the existing record is insufficient to review these issues, we must reverse the judgment of the district court which affirmed Trampe's sentence, and on remand, we direct the district court to consider Trampe's assignments of error relating to the enhancement of his sentence, basing its review upon the record presented to it on rehearing. See, generally, 5 C.J.S. *Appeal and Error* § 839 (1993).

## VI. CONCLUSION

We conclude that the county court did not err in receiving the test results of Trampe's blood alcohol level, and his conviction

for DUI is affirmed. With regard to the enhancement of Trampe's sentence, we reverse the judgment of the district court and remand the cause for further proceedings as specified above.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.