IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. BROMM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
RANDALL J. BROMM, APPELLANT.

Filed May 7, 2013.    No. A-11-718.

Appeal from the District Court for Washington County, JOHN E. SAMSON, Judge, on appeal thereto from the County Court for Washington County, C. MATTHEW SAMUELSON, Judge. Judgment of District Court affirmed.

John A. Svoboda, of Gross & Welch, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.

INTRODUCTION

Randall J. Bromm appeals from an order of the district court for Washington County affirming the Washington County Court's order denying Bromm's motion to suppress and finding him guilty of driving under the influence (DUI) pursuant to Neb. Rev. Stat. § 60-6,196 (Reissue 2010). The law enforcement officer's factual basis for the initial traffic stop of Bromm, which produced the evidence upon which he was convicted, was indisputably incorrect because the color of Bromm's vehicle and the color shown on the registration did not match. We previously found that the traffic stop was a violation of the Fourth Amendment and that the evidence gained thereby should be suppressed, and therefore, we reversed the conviction. See *State v. Bromm*, 20 Neb. App. 76, 819 N.W.2d 231 (2012). The Nebraska Supreme Court granted further review and reversed our decision, finding that the good faith exception to the exclusionary rule applied and that the stop was therefore legal. *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013). The Supreme Court remanded the cause to this court for us to consider

- 1 -

and decide the other assignments of error that we had not addressed because of the result we reached in our first decision. Thus, the matter is now before us with the law of the case being that the police officer had made a lawful traffic stop of Bromm and that the evidence was not to be suppressed because of an allegedly unlawful traffic stop.

ASSIGNMENTS OF ERROR

Bromm has made four assignments of error in this appeal. The first and fourth were that "[t]he County Court erred in overruling [his] Motion to Suppress" and that "the County Court erred in finding that law enforcement had a reasonable articulable suspicion to conduct a traffic stop" of Bromm's vehicle. Those assignments have now been conclusively resolved against Bromm by the Supreme Court. Therefore, there now remain two assignments of error for us to resolve, which we quote from Bromm's brief: (1) "The County Court erred in finding that the law enforcement officer followed proper procedures in administrating the preliminary breath test" (PBT), and (2) "The County Court erred in finding the law enforcement officer had probable cause to arrest [Bromm]."

BACKGROUND

We need not discuss the factual background that relates to the Supreme Court's decision, and whether the initial traffic stop was lawful, which is found in the two previously cited opinions. Thus, we confine ourselves to those facts relating to the remaining assignments of error.

Sgt. Walter Groves of the Washington County sheriff's office was traveling south on County Road 33 in Washington County, Nebraska, at approximately 11:30 p.m. on May 22, 2010, when he observed a dark-colored Chevy utility vehicle traveling north and made a now-established lawful traffic stop of the vehicle. Groves positioned his police cruiser behind the vehicle and made contact with the driver, Bromm. Upon doing so, he detected a strong odor of alcohol coming from inside the vehicle.

Groves testified that he had Bromm get out of his vehicle and sit in the front passenger seat of Groves' cruiser so that he could determine whether the odor of alcohol was coming from Bromm or from the other passengers in his vehicle. Groves testified that once the two of them were in the cruiser, he smelled alcohol on Bromm and Bromm admitted to drinking that evening, stating that he had a couple of beers at a friend's birthday party. Groves asked Bromm how many beers he had consumed that evening, and Bromm stated that he had three beers in the last 3 hours. Groves had Bromm turn his head toward him in order to conduct horizontal gaze nystagmus (HGN) testing--which he did inside his cruiser that evening rather than outside, because of very windy conditions. Groves testified over foundational objection by Bromm's counsel that he detected six HGN qualifiers in Bromm and that only four HGN qualifiers are necessary to show alcohol impairment. And due to the strong wind blowing that night, Groves did not have Bromm perform any field sobriety testing outside the cruiser. Bromm submitted to a PBT, which registered a blood alcohol content of .137. Bromm was taken into custody and transported to the sheriff's office. After waiting the requisite 15 minutes prior to retesting Bromm's blood alcohol content on the DataMaster, his breath tested .116 grams of alcohol per 210 liters of breath, clearly above the legal limit. Bromm was charged with DUI.

Bromm filed an amended motion to suppress on September 10, 2010, in which he alleged, in addition to the lack of a lawful stop, that his arrest was based on a PBT which was not conducted according to the methods approved by the Nebraska Department of Health and Human Services under title 177 of the Nebraska Administrative Code. A hearing was held on the amended motion to suppress on October 25. Groves testified, and four exhibits were received into evidence: a copy of title 177, Groves' PBT checklist for Bromm, Groves' narrative police report, and a video recording of the traffic stop. Part of Bromm's theory at the hearing was that Groves did not administer the PBT properly because Bromm burped during the 15-minute observation period prior to the test, which he now claims should have started the 15-minute waiting period anew before a PBT could be administered. Bromm's motion to suppress was overruled.

According to a February 28, 2011, order of the county court, a bench trial on stipulated facts was held on February 14, at which trial the parties stipulated that the court could consider all testimony and exhibits from the suppression hearing. The order recites that exhibit 5 was received into evidence at trial and that the matter was taken under advisement. The court's order of February 28 finds Bromm guilty of DUI.

Bromm appealed to the district court for Washington County, and the matter came before that court on May 4, 2011. The evidence from the county court proceedings was received, and the parties were given the opportunity to submit briefs. The issues identified in the district court's 14-page August 15 order are whether Groves (1) had reasonable suspicion to stop Bromm's vehicle, (2) followed proper procedures in administering the PBT, and (3) had probable cause to arrest Bromm. As stated before, the first issue is "off the table."

The district court found that the odor of alcohol emanating from Bromm, Bromm's admission that he had been drinking, and the results of the HGN and PBT tests amounted to sufficient probable cause to arrest him. In sum, the district court found that the county court did not err in overruling Bromm's motion to suppress or in finding him guilty of DUI. Bromm appealed, and as indicated at the outset, the cause is now before us again upon the Supreme Court's remand.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id*.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

- 3 -

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. See *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010). In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeal, and as such, its review is limited to an examination of the county court record for error or abuse of discretion. *Id.*

ANALYSIS

*Did Arresting Officer Lack Sufficient Foundation*
*to Testify to Result of HGN Test?*

In the stipulated county court trial, Bromm objected to Groves' testimony that the results of the HGN test showed signs of impairment because it was not conducted properly and should have been excluded from evidence. The HGN test is to be performed with the officer facing the suspect "straight on." But in this case, the test was done inside the cruiser with Bromm turned in his seat looking toward Groves. Bromm argues that Groves did not perform the test "as instructed" and that consequently, "any results should not be admitted in evidence," given Groves' failure to observe other signs of impairment. Brief for appellant at 10. Groves testified that the test was done inside the cruiser and that no other sobriety tests were conducted outside of the cruiser because of high winds that night. Groves testified that he was facing Bromm straight on, that he noted six of eight indications of impairment he had been trained to observe from the HGN test, and that the results indicated impairment. Groves testified that he was trained in how to administer the test and how to determine the results. Clearly, there was foundation for Groves' testimony about the administration of the HGN test. Preliminary questions concerning the admissibility of evidence are determined by the trial judge. See Neb. Evid. R. 104, Neb. Rev. Stat. § 27-104 (Reissue 2008). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007). Given Groves' testimony that he was trained in the administration of the HGN test, as well as knowing the significance of the results, and that he followed the correct procedure, we cannot say that the trial judge abused his discretion in admitting the HGN results over the foundational objection. The purported shortcomings in the administration of the test go to the weight to be given it by the trier of fact, not its admissibility. The county court did not err in admitting the results of the HGN, and this assignment of error is without merit.

*Did PBT Provide Probable Cause*
*to Arrest Bromm for DUI?*

Within the broad assignment of error that Groves did not have probable cause to arrest Bromm for DUI, Bromm argues that alleged shortcomings in the administration of the PBT invalidate it and prevent its use as a basis for probable cause. The two complaints about the administration of the PBT are first that Groves did not wait the required 15 minutes for observation of Bromm before giving him the PBT, and second, that Bromm burped or belched during the observation period, which Bromm asserts means that the observation period had to be "restarted," which it was not.

We begin with the alleged burp or belch. Groves admitted in his testimony that if Bromm had done that, he would start the 15-minute waiting period over again. The evidence is that

- 4 -

Groves' cruiser camera shows that during the observation period, Bromm put his fist to his mouth and momentarily dropped his chin to his chest, which he argues was a burp or belch requiring that the observation period had to be restarted. Groves agreed that had such happened, he would have restarted the observation period. However, there is no audible sound of a burp or belch on the video--which records sound. And Groves testified that Bromm did not burp or belch. The trial judge's decision stated that he was "unsure" whether such had occurred. While the video alone provides some inferential evidence of a burp or belch, there is other evidence that there was no burp or belch, including Groves' testimony and the lack of sound typically associated with such activity. Bromm, in effect, asks us to make a different factual finding--that there was a burp or belch--meaning that the trial judge was clearly wrong when he in effect found that Bromm had not carried his burden of proof to show the alleged occurrence of an event requiring the observation period before administration of the PBT to be restarted. For us to do that, we would have to conclude that the trial judge's factual finding on this point was clearly erroneous. Given the evidence on this point that we have recounted, we cannot say that the trial judge was clearly wrong. Thus, this claim for reversal of the conviction is without merit.

*Did Trial Court Err in Finding That Officer*
*Observed Bromm for Required*
*15 Minutes Before PBT?*

There is conflicting evidence about the 15-minute observation period before the administration of the PBT which read .137, well over the legal limit. We note that it has been held that the administration of a PBT is more in line with field sobriety testing and a *Terry* stop than it would be with a formal arrest and that the administration of a PBT does not need to be supported by probable cause. *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). See, also, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The *Prescott* court said that an officer is reasonable in administering a PBT if he can point to specific, articulable facts indicating that an individual has been driving under the influence of alcohol. Here, the specific, articulable facts would be the smell of alcohol emanating from Bromm, the results of the HGN test, and Bromm's admission that he had been drinking beer. But it is clear under 177 Neb. Admin. Code, ch. 1 (2004), that the officer must observe the suspect for 15 minutes before the administration of a PBT.

Groves testified that he observed Bromm for the required time period before the PBT. It is clear that Groves does not have to constantly stare at Bromm for 15 minutes. In *State v. Prescott, supra*, the court said, "A review of the video of the stop shows that at least 15 minutes elapsed *between the initial contact* between [the officer] and [the defendant] and the administration of the PBT." 280 Neb. at 106, 784 N.W.2d at 883 (emphasis supplied). The *Prescott* court found that the observation period was sufficient. In the present case, there was evidence that Groves' observation of Bromm from first contact to the PBT was clearly more than 15 minutes. That said, the record contains some conflicting testimony about the observation period. This confusing and at times contradictory testimony appears to arise from the notion that the suspect and the officer must be seated together in the cruiser with the officer having an "eagle eye" on the suspect for 15 minutes. However, such is not required in order for there to be a proper observation period. In *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010), the

Nebraska Supreme Court embraced this court's reasoning in *State v. Cash*, 3 Neb. App. 319, 526 N.W.2d 447 (1995), that proper observation is something less than staring at a suspect for 15 minutes. The *Scheffert* court then explained:

> To "observe," under the rule regarding observation prior to giving a PBT, does not require a police officer to stare fixedly at the person being tested. The officer must, however, be in a position to detect, through the use of one or more senses, any conduct or event which could contaminate the breath sample and taint the results. See, *Bennett v. State, Dept. of Transp.*, 147 Idaho 141, 206 P.3d 505 (Idaho App. 2009); *State v. Filson*, 409 N.J. Super. 246, 976 A.2d 460 (2009).

279 Neb. at 487, 778 N.W.2d at 741.

Groves' testimony was that he made an error in his police report when he said that he first observed Bromm's vehicle at 11:28 p.m., when in fact that was the time when he contacted Bromm at his vehicle window. And that is the time at which he began his 15-minute observation period. And on cross-examination, Groves denied defense counsel's suggestion that observation begins when the suspect is in the cruiser. Instead, Groves testified that, in accordance with the above authority, he had Bromm under observation from the time of initial contact at the vehicle window as in *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). The evidence is consistent that the PBT was administered at 11:45 p.m. If one accepts Groves' explanation for the discrepancy as to what happened at 11:28 p.m., as the trial court did, noting that Groves' testimony had cleared the matter up, then there was compliance with the 15-minute observation period. Consequently, the PBT could properly be used as part of Groves' probable cause for the arrest. See *State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000) (PBT is admissible for limited purpose of establishing probable cause). The issue comes down to the credibility of Groves as to the precise time when he started the observation period. The trial court obviously accepted Groves' testimony that 11:28 p.m. was when he was at Bromm's vehicle window making contact and that such time was when he began his 15-minute observation of Bromm. After our review of the record, we cannot say that such factual finding is clearly erroneous.

## CONCLUSION

Given Bromm's admission of recent drinking, his positive indicators on the HGN test, and a PBT of .137, Groves clearly had probable cause to arrest Bromm. Therefore, the trial court properly overruled the suppression motion and properly convicted Bromm. And, the district court was correct in upholding the conviction and sentence.

AFFIRMED.